**CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT**

5/3/2025

**THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT** ("Agreement"), executed on _____ by and between Acumen Financial Advantage, LLC ("AFA") and Stearns Financial ("COUNTERPARTY") (each a "Party", and collectively, the "Parties").

**WHEREAS**, COUNTERPARTY hereto is desirous of exploring and evaluating Acumen Life Insurance Programs for the benefit of COUNTERPARTY;

**WHEREAS**, in furtherance of exploring and evaluating the Life Insurance Programs, the Parties intend to engage in, and have engaged in, discussions and negotiations and have made and will make available to each other specific proprietary and confidential information on a confidential basis; and

**WHEREAS**, the Parties hereto wish to assure the protection, preservation and confidential nature of the information to be disclosed or made available to each other in connection with the exploration and evaluation of the Life Insurance Programs.

**NOW, THEREFORE**, in reliance upon and in consideration of the foregoing and of the following mutual undertakings, covenants and promises contained herein, and other good and valid consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, for themselves, their subsidiaries and their Affiliates (defined below), intending to be legally bound, agree as follows:

**Article I. Receiving and Disclosing Party.** As used and referred to herein, "Receiving Party" shall mean the Party receiving or having access to Confidential Information of the other Party and "Disclosing Party" shall mean the Party providing Confidential Information, or access to such Confidential Information to the other Party, and shall be used to mutually refer to Acumen or COUNTERPARTY, as the case may be.

**Article II. Confidential Information.** As used and referred to herein, "Confidential Information" shall mean and include any and all material, information or know-how, regardless of the form in which it is communicated or maintained, whether disclosed prior to or on or after the date of this Agreement, whether oral, electronic, visual, written, stored or in any other form or medium, together with all copies thereof, and whether prepared by Disclosing Party or otherwise, including information relating to the Disclosing Party's technology platforms, research, development, sales, marketing, analyses, machine code, intellectual property, documentation, notes, trade secrets, products, computer software, formulas, vendors or clients, finances, business plans, human resources, operations and affairs, or any other information, and all tangible embodiments of such information, used in or relating to the business of Disclosing Party, together with all documents, memoranda, notes and other writings prepared by Receiving Party or any of its officers, employees, directors or agents incorporating such information, whether or not marked or identified as confidential as Confidential Information.

**Article III. Exclusions from Confidential Information.** Notwithstanding the foregoing, Confidential Information shall not include information as to which Receiving Party can demonstrate:

(i)      was previously known by or lawfully in the possession of Receiving Party prior to its receipt from Disclosing Party as demonstrated by the records of Receiving Party;

(ii)     (a) is part of the public domain, through no fault, wrongful action or violation of this Agreement by Receiving Party; (b) is independently developed by or on behalf of Receiving Party with no reliance upon or usage of information disclosed to it by Disclosing Party as demonstrated by the records of Receiving Party; or (c) Receiving Party received such information from a third party owing no obligation of confidentiality to Disclosing Party as demonstrated by the records of Receiving Party.

EXHIBIT 3

**Article IV. Use of Confidential Information**. Receiving Party will always, whether prior to or on or after the date of this Agreement, hold all Confidential Information in trust for Disclosing Party, and only use such Confidential Information in the strictest confidence in accordance with this Agreement.

**Article V. Obligations of Non-Disclosure**. Receiving Party will not disclose, or in any manner communicate or permit or acquiesce in the disclosure or communication of such Confidential Information at any time to any unaffiliated individual or organization.

**Article VI. Survival and Termination.** This Agreement shall continue in effect until the termination by the Parties of their discussions relating to the Life Insurance Programs. Notwithstanding any termination of this Agreement, all Confidential Information, whether in physical form or otherwise, shall continue to be subject to the terms of this Agreement, unless this Agreement is superseded by a definitive agreement between the two Parties. All Confidential Information and materials containing Confidential Information delivered by Disclosing Party or its representatives under this Agreement are and will remain Disclosing Party's property. Disclosing Party may request in writing at any time, including, without limitation, upon the termination of this Agreement, that any Confidential Information disclosed pursuant to the terms of this Agreement and any copies thereof be returned or destroyed (including, without limitation, any electronically stored copies), at the sole option of Disclosing Party, with a written statement duly signed by an authorized officer of Receiving Party to the effect that it has so returned or destroyed all copies of the Confidential Information.

**Article VII. Required Disclosure.** If Receiving Party is ordered or compelled to disclose Confidential Information by a court of competent jurisdiction, a governmental agency or under subpoena; Receiving Party may disclose such Confidential Information only to the extent required; provided, however, that:

(i)     Receiving Party provides Disclosing Party prompt notice of the request or requirement prior to disclosure;

(ii)    (a) as soon as reasonably possible, Receiving Party consults with its legal counsel confirming that disclosure of such Confidential Information is, in fact, required; (b) Receiving Party uses reasonable efforts to resist the disclosure of such Confidential Information if advised by its legal counsel in writing that such disclosure is not required; and (c) Receiving Party cooperates with Disclosing Party on reasonable request to obtain a protective order to prevent or otherwise limit the required disclosure.

**Article VIII. Equitable Relief.** The Parties hereto acknowledge that either Party's breach of the obligations hereunder would cause the other Party to suffer irreparable injury and harm for which it would not have an adequate remedy at law and, therefore, in the event of such breach, the non-breaching Party shall be entitled to seek its equitable remedies, including but not limited to injunctive relief, in addition to all other remedies available to it at law, in equity or otherwise.

**Article IX. Applicable Law.** California law (excluding its choice of law rules) shall govern the interpretation and enforcement of this Agreement.

**Article X**. **Entire Agreement.** This is the complete agreement between the Parties regarding the confidential treatment of any information exchanged between them in connection with the Business Opportunities and any modification or alteration hereof shall be accomplished only by a written agreement executed by both Parties.

**Article XI. No Further Obligations.** Unless and until a definitive agreement between the Parties is executed and delivered, neither party will have any legal obligation of any kind by virtue of this Agreement

or any other written or oral expression with respect to the Life Insurance Programs, except as provided in this Agreement. Nothing hereunder shall obligate either Party to enter into any further agreement or negotiations with the other or grant or confer to Receiving Party any rights by license or otherwise in any of the Confidential Information.

**Article XII. Disclaimer and Limitation of Liability**. Disclosing Party shall not have any liability in contract, tort, or otherwise, resulting from the Receiving Party's use of the confidential information or participating in the discussions and negotiations described herein.

**Article XIII. No Assignment**. This Agreement may not be assigned by either Party, except with the prior written consent of the other Party, successor and permitted assigns of each Party and is binding on the successor and permitted assigns of each Party.

**Article XIV**. **No Waiver.** No failure or delay by either Party in exercising any right hereunder shall operate as a waiver thereof, and no single or partial exercise of any right shall preclude any other or further exercise thereof or the exercise of any other right hereunder.

**Article XV. Severability.** In the event any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall be unimpaired, and the Parties will negotiate in good faith to substitute a provision of like economic effect and intent.

**Article XVI. Public Announcements**. Each Party agrees that it shall not make any public announcements about the existence or performance of this Agreement, the discussions regarding such arrangements or agreements and other business and operating plans being discussed or negotiated or any other matter relating to the Life Insurance Programs, whether in the form of a press release or otherwise, without first consulting with the other Party and obtaining the other Party's prior written consent. In addition, neither Party may use the name, logo, trade name, trademarks or service marks of the other Party in any manner whatsoever without the express prior written consent of the other Party.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Confidentiality and Non-Disclosure Agreement to be signed by their duly authorized representatives as of the date first written above.

**Acumen Financial Advantage, LLC**
BY: Scott Hinkle
TITLE: Principal/Co-Founder

SIGNATURE: _____Scott Hinkle_____
                        FC2F7619AE2F46D...

DATE: _____5/3/2025_____

BY: Jay Rogers
TITLE: CRO

SIGNATURE: _____
                        177DD2C8F29145B...

DATE: _____5/3/2025_____

**Docusign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: C5F6C482-409D-490E-B52F-9419D6572E28 | | Status: Completed |
| Subject: Complete with Docusign: Stearns Financial & AFA NDA.docx | | |
| Source Envelope: | | |
| Document Pages: 3 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Christine Speller |
| AutoNav: Enabled | | 24586 Calle San Vicente |
| EnvelopeId Stamping: Enabled | | Murrieta, CA  92562 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | cspeller@acumenfa.com |
| | | IP Address: 10.101.81.137 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Christine Speller | Location: DocuSign |
| 4/30/2025 12:03:09 AM | cspeller@acumenfa.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jay Rogers<br>jrogers@stearns.financial<br>Security Level: Email, Account Authentication (None) | *[DocuSigned by signature]*<br>177DD2C8F29145B...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 174.196.194.144<br>Signed using mobile | Sent: 4/30/2025 12:04:17 AM<br>Resent: 5/2/2025 4:50:19 PM<br>Viewed: 5/3/2025 11:40:36 AM<br>Signed: 5/3/2025 11:45:49 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 5/3/2025 11:40:36 AM<br>ID: 70b9f8e6-e6f3-4544-a758-71a5bba0a5c5 | | |
| Scott Hinkle<br>shinkle@acumenfa.com<br>Principal<br>Security Level: Email, Account Authentication (None) | *[Signed by: Scott Hinkle signature]*<br>FC2F7619AE2F46D...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 47.155.246.3 | Sent: 5/3/2025 11:45:50 AM<br>Viewed: 5/3/2025 12:49:20 PM<br>Signed: 5/3/2025 12:49:26 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 5/3/2025 12:49:20 PM<br>ID: eb096265-ed62-4c11-9054-73c692e3eab0 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/30/2025 12:04:17 AM |
| Certified Delivered | Security Checked | 5/3/2025 12:49:20 PM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Signing Complete | Security Checked | 5/3/2025 12:49:26 PM |
| Completed | Security Checked | 5/3/2025 12:49:26 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Modern Capital Executive Solutions (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Modern Capital Executive Solutions:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: abebis@moderncap.com

**To advise Modern Capital Executive Solutions of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at abebis@moderncap.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Modern Capital Executive Solutions**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to abebis@moderncap.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Modern Capital Executive Solutions**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to abebis@moderncap.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Modern Capital Executive Solutions as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Modern Capital Executive Solutions during the course of your relationship with Modern Capital Executive Solutions.