# EXHIBIT B

DocuSign Envelope ID: 0CDE5C89-5CFD-4605-B64E-D9F3527DB250

# Advisor Producer Agreement

By and Between:

Ryan Millman

Modern Capital

225 Northern Avenue, Suite 804

Boston, MA 02210

Capaxa LLC
Stearns Financial Group LLC
2368 Victory Parkway Suite 410
Cincinnati, OH 45206

As of this date of:

This agreement sets forth the terms upon which you and/or your organization, as named above including all owners, employees, agents, subsidiaries, and affiliates (herein "Producer"), has agreed to cooperate with Stearns Financial Group including all owners, employees, subsidiaries, agents and affiliates, (herein "SFG") to jointly (herein together referred to as "Parties" or individually as "Party") pursue certain "Business Opportunities," as hereinafter defined. When countersigned by you, this letter shall take effect as a legally binding contract as of the date stated above between Producer and SFG under the laws of Ohio ("Agreement").

1. **Business Opportunities**. The parties intend by this agreement to cooperate with each other to pursue complementary Business Opportunities, which shall involve work with non-profit organizations, healthcare provider organizations, higher education institutions, credit unions, trade and labor unions, municipalities, pass-through entities, or other disclosed target markets or potential clients including an entity's or organization's executives, employees, and member affinity groups ("Market") for certain executive non-qualified deferred compensation supplemental benefit plans and related investment portfolios including design, implementation, and support further described as "SFG Products". These respective activities in the Market once disclosed from one Party to the other Party are hereinafter referred to as "Business Opportunities." Each Business Opportunity includes working in the Market and with their respective employees and when identified and engaged in the sales process are hereinafter referred to as "Clients" once contact has been established with any representative person or entity in the Market on behalf of or in conjunction with SFG. Each party acknowledges the other has special experience and expertise with respect the Business Opportunities for Clients.

2. **Specific Activities – SFG Products**. SFG provides marketing, sales support, case design, implementation support, consulting, and administration of so-called loan regime collateral assignment split dollar life insurance plans, economic benefit regime endorsement split dollar life insurance plans, bank / corporate / credit union owned life insurance (BOLI/COLI/CUOLI), Capaxa® LifeNotes™ and LifeNotes Secured Split Dollar™, cross-over split dollar life insurance plans and 457(f)/457(b) deferred compensation plans including Non-Qualified Deferred Compensation / Supplemental Executive Retention / Retirement / Recruitment Plans (SERP) including but not limited to those that fall under US Internal Revenue Code ("IRC") §§ 1.61-22, 1.83-3(e), 1.83-6(a)(5), 1.301-

1(q), 1.7872-15, 457, 162, 105, and 106. SFG is in the business of providing such products and related services whether commission based, or fee based ("SFG Product(s)" or "Plan(s)") to Clients. Producer acknowledges that the SFG Product(s) are subject to certain contracts and arrangements intended to protect the ownership and confidentiality of proprietary methods, trade secrets, copyrighted materials, data, know-how, software, methods, business relationships and other intellectual property of SFG ("SFG Property") used in delivering SFG Product(s), and that by entering into this agreement Producer recognizes and agrees to protect and not misappropriate SFG Property or SFG Product(s).  For purposes of this agreement misappropriation includes but is not limited to any and all use of SFG Property in providing SFG Product(s) outside of any Business Opportunities without SFG knowledge and written consent ("Misappropriation"). Stearns holds all licenses needed to provide SFG Product(s).

3. **Producer Requirements**. In each Business Opportunity, Producer must work in conjunction, jointly, and in sharing revenue in accordance with Schedule A, with SFG and an assigned SFG Representative who participates in all Business Opportunities for educating Clients, Client needs analysis, consulting, Plan Design, presentation, Plan implementation, Plan Finalization, post Business Opportunity service, and/or communication with respect to SFG Products. The level of participation and resulting revenue split can be adjusted between Producer, SFG, and SFG Representative as determined in writing and approved by SFG on a per Business Opportunity basis. Producer must adhere and abide to SFG business policies, practices, procedures, privacy policies, compliance, due diligence, and Client privacy safeguards, directives, and memorandums.

4. **Compensation**.   A "Successful Business Opportunity" shall be the sale and placement of one or more SFG Product(s) to a Client (if not then an existing or actively pursued prospective Client or Client of SFG or another SFG Representative Producer) solicited on behalf of SFG by Producer.  The amount of compensation payable to each Party shall vary depending upon the extent of cooperation provided by each Party in assisting SFG or Partner to sell their services/products to such client.

    a. "GDC" shall be the gross dealer concession as revenue generated from the sale or placement of SFG Products. For purposes of this agreement, GDC shall include:
        i. For Life Insurance, Annuity, Disability, and Long Term Care Insurance, ("LADL") Issuer stated Target Premium;
        ii. For Capaxa LifeNotes and other products excluding those in Section 4.a.i., the product Issuer's GDC or the total of all compensation paid for product solicitation and advisory services.

    b. "Split Basis" shall be the attained percentage of revenue split before Utilization Factors on any new Business Opportunity as a factor of production by the Producer over the prior 24 months. The Split Basis shall be the rounded whole number percent determined by Formula A-1 where "x" is equal to prior 24 months annualized average GDC divided by an annualized Production Target.

Stearns Financial Group – Producer Agreement

Page **2** of **7**

$$\left(\left(\frac{3.75x-1.76}{7x^{\frac{32}{83}}-5}\right)^{\frac{1}{e}}-.33\right)$$

Formula A-1

c. "Utilization Factor" shall be the attained percentage of expected or selected SFG back-office resource utilization by Producer.

d. "Split Percent" shall be the sum of (i) the product of 25% of (1 – Utilization Factor) and Split Basis and (ii) the product of 75% and the Split Basis.

e. "GDC Split" shall be the lesser of 50% or the Split Percent and shall be the percentage listed on carrier or issuer forms to effect payment to Parties form the carrier or issuer made with respect to renewals or trailing revenues.

f. "Split Allowance" shall be the difference between Split Percent and GDC Split.

g. Each Party shall be compensated for Successful Business Opportunities by a split of revenue as provided in **Schedule A** hereto ("Split Basis"). Compensation paid for a Successful Business Opportunity may optionally be subject to case by case changes to be determined in writing at the completion of a Successful Business Opportunity prior to the Client(s) funding the Plan(s). SFG shall be the writing & servicing agent on every Successful Business Opportunity.

h. The "Split" is the adjusted percentage derived from the Split Basis that is listed on a product application or broker commission or compensation split form executed in connection with the placement or sale of any one or more financial products or services from Successful Business Opportunities. The Split is made without respect to individual contract allowances or overrides on SFG or Producer intermediary or carrier contracts, but is made with respect to renewal year commissions or compensation. In instances where First Year Compensation ("FYC") and Renewal Year Compensation ("RYC") cannot reflect agreed percentages the GDC Split is made based on RYC percentages and any difference in FYC as Split Allowance, if any, is paid from SFG to Producer. Producer acknowledges they will receive IRS form 1099-MISC listing all amounts paid from SFG to Producer.

i. A Split applies only to the sale or placement of a financial product as a Result of a Successful Business Opportunity. Onboarding a Plan previously sold, solicited by, or implemented by a producer unaffiliated with SFG at the time of the sale into the SFG platform will be subject to consulting fees and administration fees paid by the client. Plan sponsor consulting engagement revenue and administration fees are non-commissioned to any Producer.

j. In the event a cancellation of a policy or other product sold in a previous Successful Business Opportunity requires a refund of previously paid commission and if SFG paid Producer any portion thereof directly, the Producer will refund this amount to SFG immediately or under

terms that may be arranged for payment of the amount from future commissions or in installment payments bearing interest at the then IRS published applicable federal rate ("AFR") for the term of the proposed settlement not to exceed 3 years.

5. **Non-Disclosure of Confidential Information**. In addition to SFG Property, which shall for all purposes hereunder be deemed "Confidential Information," each Party hereby agrees to use only as contemplated herein for the joint pursuit of Business Opportunities any non-public information provided by the other Party including Client information, including without limitation SFG or Client's copyrighted and other proprietary information, Client data, Client Personal Health Information (PHI), SFG or Client financial data, SFG or Client trade secrets, SFG or Client materials, and SFG plan designes or specifications, software, processes, plans, know-how, lists of Clients and target or prospective Clients, life insurance policy illustrations and related information, Plan designs, Plan data, business relationships, projections, marketing data, marketing strategies, and methods of operation ("Confidential Information"). The Party receiving Confidential Information shall not otherwise use or disclose it, and in safeguarding such Confidential Information shall use the same degree of care it uses to protect its own Confidential Information, but in no case less than a reasonable degree of care. Confidential Information may be shared by a receiving Party with its officers, owners, employees, agents and advisors to the extent reasonably required to pursue Business Opportunities jointly with the disclosing Party, provided the receiving Party shall cause all such persons to abide by the terms of this "Non-Disclosure of Confidential Information" Section as if they were directly a Party hereto. Confidential Information shall not include items and information (i) generally known to the public without breach of this agreement or other obligation of confidentiality, (ii) known to the receiving Party independently of receipt from the disclosing Party and without breach of any third party's obligation of confidentiality, or (iii) must be disclosed pursuant to proper legal process (provided that the Party subject to such process first endeavors in good faith to notify the disclosing Party of such process so that the disclosing Party may timely act to block or limit such disclosure). No Party shall hereunder acquire any rights in the Confidential Information except for limited rights of usage as herein provided, and upon the termination of the term of this agreement, shall at the direction of the disclosing Party return or destroy the same, certifying such compliance in writing.

6. **Non-Solicitation**. Parties shall not, independently or in association with anyone other than the other Party, seek to provide SFG Products to Clients with open Business Opportunities at any time during a period of twelve (12) months commencing on the later of the cessation or closing of a Business Opportunity, or termination of this Agreement.

7. **Client Ownership**. The ownership of a Client account relationship includes the right to service, maintain, and solicit future Business Opportunities with the Client. SFG owns the Client account with respect to SFG Products and Producer is hereby granted a non-transferrable and un-saleable right of first refusal to work on all Business Opportunities arising from the Client account and to share revenue in accordance with Section 4 for as long as this Agreement is in force. Upon Agreement termination Producer hereby relinquishes all rights to Client account ownership with respect to in-force SFG Products and SFG hereby relinquishes all rights to Client account ownership with respect

DocuSign Envelope ID: 0CDE5C89-5CFD-460E-B64E-R9F3527DB250

to future Business Opportunities, each subject to Section 6 above. Nothing in this section shall be construed to limit a Client's selection for future business opportunities.

8. **Dispute Resolution**.  The Parties will attempt in good faith to resolve any dispute or claim arising out of or relating to this agreement or breach thereof, promptly by negotiations between representatives of the Parties at a mutually agreed time and place.  If the dispute has not been resolved within thirty (30) days of their first meeting, or if the Parties fail to meet within thirty (30) days of the date either party requests the other to meet about such dispute, then at the election of either Party the controversy will be resolved by confidential, binding arbitration before a single arbitrator acting under the auspices of the American Arbitration Association ("AAA") and in accordance with its applicable rules, and the Federal Arbitration Act, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof.  The arbitration will be conducted in Cincinnati, Ohio unless otherwise agreed by the Parties.  Each Party will pay its own costs and expenses in any dispute resolution proceedings, and will share equally the fees and costs of the AAA, including the fees of the arbitrator, except that the prevailing Party in any action to compel arbitration hereunder, to enforce an arbitration award hereunder or to prevent or seek damages for any use or disclosure of Confidential Information in violation of this agreement, shall be entitled to reimbursement of its legal fees and cost by the other Party.  In addition to the foregoing, any Party may without the need to post bond or prove irreparable harm seek a temporary restraining order and/or preliminary injunction against the wrongful disclosure or use of Confidential Information and/or threatened or actual violation of the provisions of Section 6 or Section 7, by an action brought in any court of competent jurisdiction located in Cincinnati, Ohio, to the personal jurisdiction of all such courts each of the Parties hereby knowingly and irrevocably submits, and in any such action the prevailing Party shall be entitled to reimbursement of its legal fees and costs by the other Party.

9. **Term and Termination**.  Either party may terminate this agreement at any time for any reason, upon at least thirty (30) days prior written notice to the other, but no such termination shall affect any obligation arising prior to the effective date of termination, and the provisions of Sections 5, 6, 7, and 8 shall survive any such termination.

10. **Miscellaneous**.  The Parties are independent contractors, with no power to commit the other to any legal obligations to third parties, and without limiting the generality of the foregoing are not employees or joint venturers of each other. This agreement shall take effect as a legally binding contract under the internal laws of Ohio, expresses the entire agreement of the Parties with respect to the subject matter hereof and shall not be amended or waived except with the written consent of the Parties. This agreement will be binding upon and inure to the benefit of the permitted successors and permitted assigns of each Party, but Producer may not assign any of its rights or delegate any of its duties hereunder without the written consent of SFG.  If any provision hereof is finally determined to be illegal or unenforceable, it shall not affect any other provision hereof and the provision found illegal or unenforceable shall be deemed reformed to the minimum substantive extent necessary in order to be legal and enforceable.  This agreement may be executed in one or more counterparts, manually or electronically, and all such counterparts shall constitute a single

DocuSign Envelope ID: 0CDE5C89-5CFD-46D5-B64F-D9F3527DB250

instrument, and execution by means of facsimile, email or other electronic medium shall be equally valid as an original signature.

If you are in agreement with the foregoing, please countersign this letter below, whereupon it shall take effect as a legally binding contract under the internal laws of Ohio as of the date first above written.

Capaxa LLC
Stearns Financial Group LLC

By:_____

Name: J. Eric Stearns
Title:    President

Accepted and Agreed:

PRODUCER

By:_____

Name: Ryan Millman
Title:   CEO/President
         Modern Capital

## Schedule A

- LADL Sales: Annualized TP up to $1,000,000 GDC at 50%
  - Utilization Factor of 1.0
- LifeNotes: Annualized TP up to $1,000,000 GDC at 60%
  - Utilization Factor of 0.40
  - LifeNote base GDC = 25bps of AUM
  - Initially 60% of LifeNote base GDC (25bps) equal to 15bps of AUM per annum

| | | | For LADL Sales | For LifeNotes |
| --- | --- | --- | --- | --- |
| | | | **Back Office Utilization Factor** | |
| 1,000,000 = Target Premium Goal | | Design | 1.00 | 0.40 |
| As 1/2 of Trailing 24 Mo. | | Analysis | 1.00 | 0.40 |
| produced Target Premium + AUM GDC | | Implementation | 1.00 | 0.40 |
| Formula valid only in the range below | | **Utilization Factor** | **1.00** | **0.40** |
| **Acutal 24M TP / 2** | **% of TP Goal** | **Split Basis** | **FYC Split %** | **FYC Split %** |
| 500,000 | 50% | 0.34 | 26% | 31% |
| 1,000,000 | 100% | 0.67 | 50% | 60% |
| 1,250,000 | 125% | 0.71 | 53% | 64% |
| 1,500,000 | 150% | 0.75 | 56% | 68% |
| 1,750,000 | 175% | 0.77 | 58% | 69% |
| 2,000,000 | 200% | 0.80 | 60% | 72% |
| 2,250,000 | 225% | 0.82 | 62% | 74% |
| 2,500,000 | 250% | 0.84 | 63% | 76% |
| 2,750,000 | 275% | 0.86 | 65% | 77% |
| 3,000,000 | 300% | 0.88 | 66% | 79% |
| 3,250,000 | 325% | 0.89 | 67% | 80% |
| 3,500,000 | 350% | 0.91 | 68% | 82% |
| 3,750,000 | 375% | 0.92 | 69% | 83% |
| 4,000,000 | 400% | 0.94 | 71% | 85% |
| 4,250,000 | 425% | 0.95 | 71% | 86% |
| 4,500,000 | 450% | 0.96 | 72% | 86% |
| 4,750,000 | 475% | 0.98 | 74% | 88% |
| 5,000,000 | 500% | 0.99 | 74% | 89% |
| 5,250,000 | 525% | 1.00 | 75% | 90% |

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 0CDEFC895CFD460FB64ED9F3527DB250 | | Status: Completed |
| Subject: Complete with DocuSign: Advisor Producer Agreement (v2.1).pdf | | |
| Account: CAPAXA | | |
| Is Health Record: FALSE | | |
| Workflow Category:  Operations | | |
| Source Envelope: | | |
| Document Pages: 7 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jesse Brady |
| AutoNav: Enabled | | 2368 Victory Parkway Suite 410 |
| EnvelopeId Stamping: Enabled | | Cincinnati, OH  45206 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | jbrady@stearns.financial |
| | | IP Address: 96.252.63.10 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jesse Brady | Location: DocuSign |
| 1/31/2023 11:24:35 AM | jbrady@stearns.financial | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ryan Millman<br>rmillman@moderncap.com<br>CEO/President<br>Modern Capital<br>Security Level: Email, Account Authentication (Optional) | *Ryan Millman*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 73.219.241.50 | Sent: 1/31/2023 11:26:36 AM<br>Viewed: 1/31/2023 12:31:04 PM<br>Signed: 1/31/2023 12:31:32 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 1/31/2023 12:31:04 PM<br>ID: 486df0b0-8478-4560-813f-7718eb2b8210<br>Company Name: Capaxa LLC | | |
| J. Eric Stearns<br>eric@stearns.financial<br>President<br>Stearns Financial Group<br>Security Level: Email, Account Authentication (Optional) | *[signature]*<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 216.68.181.182 | Sent: 1/31/2023 12:31:34 PM<br>Viewed: 2/1/2023 4:00:23 PM<br>Signed: 2/1/2023 4:00:43 PM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 1/31/2023 11:26:36 AM |
| Certified Delivered | Security Checked | 2/1/2023 4:00:23 PM |
| Signing Complete | Security Checked | 2/1/2023 4:00:43 PM |
| Completed | Security Checked | 2/1/2023 4:00:43 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 6/6/2022 4:55:02 PM
Parties agreed to: Ryan Millman

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Capaxa LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Capaxa LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by phone call: 800-686-6916
To contact us by email send messages to: notices@stearns.financial
To contact us by paper mail, please send correspondence to:
Stearns Financial Group
2368 Victory Parkway Suite 410
Cincinnati, OH 45206

**To advise Capaxa LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at notices@stearns.financial and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Capaxa LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to notices@stearns.financial and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Capaxa LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to notices@stearns.financial and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Capaxa LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Capaxa LLC during the course of your relationship with Capaxa LLC.